MADELEINE M. LANDRIEU, Judge.
hOn February 25, 2011 the Board of Supervisors of Louisiana State University (“LSU”), instituted proceedings to expropriate certain property, including a lot and building owned by Dixie Brewery Company, Inc. (“Dixie”), in connection with the development and construction of LSU’s new University Medical Center (“UMC”) and the adjacent Veterans Affairs Medical Center (“VAMC”).[1] Since then, Dixie has filed multiple motions and petitions seeking to enjoin LSU on constitutional grounds from selling or leasing the expropriated property (“the Dixie parcel”) to the United States Department of Veterans Affairs (“V.A.”)] for use as part of the VAMC. The last two of those petitions, one filed in January, 2012, and one in October, 2012, are pertinent here. For purposes of this opinion, these will be referred to as the “first” petition and the “second” petition, respectively.
This appeal is taken from the trial court’s November 16, 2012 judgment, *132 which dismissed with prejudice Dixie’s second “Petition for Permanent Injunction and Request for Preliminary Injunction.” The trial court granted the exception of |2res judicata filed on behalf of LSU and its former president, John Lombardi.[2] The court concluded that its February 7, 2012 judgment, which had denied Dixie’s first petition for injunctive relief against the same two defendants, precluded consideration of the current petition.[3]
ISSUE
The sole issue on appeal is whether the trial court erred by dismissing Dixie’s petition on the basis of res judicata.
DISCUSSION
In reviewing the granting or denial of an exception res judicata, the appellate court must determine whether the trial court’s decision is legally correct or incorrect. Myers v. National Union Fire Ins. Co. of Louisiana, 2009-1517, p. 5 (La.App. 4 Cir. 5/19/10), 43 So.3d 207, 210.
The doctrine of res judicata precludes re-litigation of claims and/or issues arising out of the same factual circumstances when a valid final judgment exists. Id. Louisiana’s res judicata statute is La. R.S. 13:4231, which states:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
Ia(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
(3)A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.
Also relevant is Louisiana Code of Civil Procedure Article 425, entitled “Preclusion by judgment,” which provides, in pertinent part: “A party shall assert all causes of action arising out of the transaction or occurrence that is the subject matter of the litigation.” The Louisiana Supreme Court has held that in order to preclude a second action under the theory of res judi-cata, five elements must be satisfied:
(1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litiga *133 tion; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation.
Burguieres v. Pollingue, 2002-1385, p. 8 (La.2/25/03), 843 So.2d 1049, 1053.
In the case before us, Dixie concedes in its brief that the first three elements have been met: namely, that the trial court’s February 7, 2012 judgment [“the first judgment”] is a valid, final judgment between the same parties. That judgment denied Dixie’s “request for a preliminary and permanent injunction enjoining [LSU] from selling or leasing the property referred as [sic] Square 556 or the Dixie Brewery Parcel.” Dixie did not seek review of that judgment.
Dixie filed this second petition for injunction on October 12, 2012, praying for exactly the same relief as it had in the first petition. The trial court dismissed the second petition on the basis of res judica-ta. In reviewing that decision, the Lpertinent questions are whether Dixie’s second petition asserted a cause of action that 1) arose out of the same transaction or occurrence that was the subject matter of the first petition, and 2) existed at the time the first judgment was rendered. The trial court concluded that these two elements had been satisfied. We agree.
Both Dixie’s first and second petitions sought to enjoin LSU from transferring the subject property to the V.A. because, according to Dixie, any such transfer would violate Article I, Section 4(H)(1) of the Louisiana Constitution. That section provides, in pertinent part: [T]he state or its political subdivisions “shall not sell or lease property which has been expropriated and held for not more than thirty years without first offering the property to the original owner....”[4] (Emphasis supplied). Thus, the “transaction or occurrence” that is the subject of Dixie’s petitions is the transfer of the property in question to the V.A., which Dixie was seeking to prevent.
Dixie contends, however, that the second petition for injunction asserted a cause of action that arose out of a different set of operative facts than those upon which the first petition was based. Therefore, Dixie argues, the cause of action asserted in the second petition did not arise from the same transaction or occurrence as did the cause of action asserted in the first petition. The basis for Dixie’s argument is that in its first petition, it relied upon a “Right of Use” agreement between LSU and the V.A. as evidence that the transfer would constitute an illegal sale or lease, whereas, in its second petition, Dixie relied upon a subsequent “Act of Exchange” as such evidence. In its first petition, Dixie ^asserted it would suffer irreparable harm if its property was unconstitutionally transferred by LSU to the V.A. The trial court declined to grant an injunction. In its second petition, Dixie again asserted that it would suffer irreparable harm if its property was unconstitutionally transferred by LSU to the V.A., and sought the same injunctive relief. The fact that Dixie cited the Right of Use agreement as evidence of unconstitutionali *134 ty in the first petition and cited the Act of Exchange as evidence in the second petition is of no moment. As this court has noted, the fact that a plaintiff “seek[s] to rely upon different evidence to support the same legal principles” does not state a new cause of action. Bulot v. Intracoastal Tubular Services, Inc., 2004-0398, 0399, 0400, p. 8 (La.App. 4 Cir. 9/29/04), 883 So.2d 1146, 1151. In Cooper v. Federal Land Bank of New Orleans, 197 So. 822, 824 (La.App. 1st Cir.1940), the court held that the principle of res judicata prevents a party from seeking multiple injunctions for the same purpose against the same opposing party, stating:
Where the plaintiff is aware of other grounds for an injunction other than those set up in his petition to prevent a sale of his property, he cannot in a subsequent suit filed for the same purpose avail himself of the grounds which he knew of at the time of filing his first suit. Courts look with disfavor on a multiplicity of suits to attain a purpose that can be fully litigated in one suit, and thus prevent a person from being annoyed and harassed by several suits designed to secure one particular form of relief.
We therefore conclude, as did the trial court, that the cause or causes of action asserted by Dixie in these two petitions for injunction arose from the same transaction or occurrence — the allegedly unconstitutional transfer of Dixie’s property by LSU to the V.A.
| (¡Dixie further contends that the cause of action asserted in the second petition did not exist at the time the first judgment was rendered because the Act of Exchange was executed after the date of the first judgment and before the filing of Dixie’s second petition for injunction. However, the relevant question is not whether the Act of Exchange existed at the time the first judgment was rendered, but whether Dixie’s cause of action existed at that time.
Despite the fact that the Act of Exchange was not executed until July, Dixie was clearly aware at the time it filed the first petition for injunction that LSU intended to transfer the property to the V.A. As stated previously, Dixie’s first petition relied upon the Right of Use agreement. The Right of Use agreement itself clearly spells out the parties’ intention for the V.A. “to legally acquire a Fee Simple Title Interest in the Premises from LSU as soon as possible.... ” The Act of Exchange was simply a means of accomplishing the intent expressly stated in the Right of Use agreement. Moreover, the record demonstrates that Dixie has been aware since the onset of this litigation of LSU’s intent to transfer to the V.A. all the properties located in the footprint of the VAMC, including the Dixie property. This intent was first documented in two agreements — the 2007 Memorandum of Understanding between the City of New Orleans and the VA (the “MOU”) and the 2007 Cooperative Endeavor Agreement between LSU, the City of New Orleans and the State of Louisiana (“CEA”). These agreements provided the basis for the expropriation suit. By the time of the first judgment, several Acts of Exchange had been executed between LSU and the V.A. to transfer other properties in the VAMC footprint. These Acts of Exchange have been used by LSU, the City and the State to transfer the expropriated properties to the V.A. in exchange for the site of the former V.A. hospital in New Orleans, which was devastated by Hurricane 17Katrina. LSU’s intent to transfer Dixie’s property, along with all the other properties in the VAMC footprint, to the V.A. was never disguised. Dixie was clearly aware of this eventuality at the time it filed its first petition seeking to enjoin any such transfer. We therefore do not accept *135 Dixie’s contention that the Act of Exchange created a wholly new cause of action that did not exist at the time the first judgment was rendered. We conclude that the cause of action Dixie asserts in the petition at issue here not only existed, but was asserted, in its first petition for injunction, which the trial court denied on February 7, 2012.
Dixie’s final argument on appeal centers on its pending motion to dismiss the expropriation suit. Prior to seeking injunctive relief, Dixie filed this motion in the trial court challenging the validity of the expropriation pursuant to La. R.S. 19:147.[5] Dixie now argues that the filing of its motion to dismiss “places the adjudication of title in the hands of the Court” and “blocks the ability of LSU to take actions relative to the property” until the motion has been decided. This argument is specious, and does not appear to have been made in the trial court.
This court has held that the expropriation authority of LSU pursuant to La. R.S. 19:141, et seq. is constitutional.[6] La. R.S. 19:144 provides that upon the filing of the petition for expropriation, the court shall issue an ex parte order directing |sthat the amount of the estimated compensation (which amount is required to be included in the petition) be deposited into the registry of the court. La. R.S. 19:145 further provides that once that amount is deposited, “title to the property and property rights specified in the petition shall vest in the plaintiff [the expropriating authority]. ...” La. R.S. 19:146 requires the clerk of court to issue a notice of expropriation to the defendant upon receipt of the deposit by the court. La. R.S. 19:147 then affords the defendant ten days from service of this notice to file a motion to dismiss, as Dixie has done here, on the grounds that the property was not expropriated for a public use. Significantly, however, this section does not provide that the expropriating authority is divested of title to the property or of any property rights upon the defendant’s filing of a motion to dismiss. Nothing in the statute or the applicable law suggests that if a landowner challenges the taking of his property, the expropriating authority loses title or any rights to the property until the challenge has been resolved. We therefore reject Dixie’s argument in this respect.
CONCLUSION
Accordingly, for the reasons stated, we find that the trial court did not err by granting the exception of res judicata. We therefore affirm the trial court’s judgment dismissing the petition for injunction.
AFFIRMED.

. Three separate proceedings filed by LSU and/or Dixie in relation to the expropriation were transferred to and consolidated in a single division of the civil district court prior to Dixie’s filing of either of the petitions for injunction mentioned here.

. Dixie's petition for injunctive relief was filed against both LSU and Mr. Lombardi.

. In the alternative to their exception of res judicata, LSU and Mr. Lombardi filed exceptions of no cause of action, which they prayed the trial court to consider in the event it denied their exception of res judicata. Despite granting the exception of res judicata, however, the trial court also granted the exception of no cause of action as to Mr. Lombardi only, finding that Dixie had not alleged any wrongdoing by Mr. Lombardi apart from actions he took in his capacity as president of LSU, and therefore had failed to state a cause of action against Mr. Lombardi in his personal capacity. The appellants argue in their brief that this exception was wrongly granted. We find no error in the trial court’s ruling. However, we pretermit discussion of this issue, which is rendered moot by our affirmation of the trial court's dismissal of Dixie’s petition against both LSU and Mr. Lombardi on the alternate ground of res judicata.

. We particularly note that the language of Section (4)(H)(1) is limited to sales and leases. An exchange, such as the transaction that occurred here between LSU and the V.A., in which parcels of real estate have been exchanged and no money has changed hands, is neither a sale nor a lease according to the Louisiana Civil Code. La. C.C. art. 2660 defines an exchange as "a contract whereby each party transfers to the other the ownership of a thing other than money.” See Rogers v. Horseshoe Entertainment, 32,800, p. 12 (La.App. 2 Cir. 8/1/00), 766 So.2d 595, 604.

. La. R.S. 19:147 states:
Any defendant desiring to contest the validity of the taking on the ground that the property was not expropriated for a public use may file a motion to dismiss the suit within ten days from the date the notice was served on him. He shall certify thereon that a copy thereof has been served personally or by mail on either the plaintiff or his attorney of record in the suit. This motion shall be tried contradictorily with the plaintiff.
Failure to file the motion within the time provided or to serve a copy thereof on the plaintiff constitutes a waiver of all defenses to the suit except claims for compensation.

. See Alderdice v. Bd. of Sup'rs of Louisiana State Univ. & Agr. & Mech. Coll., 2012-0148, pp. 9-10 (La.App. 4 Cir. 7/25/12), 107 So.3d 7, 13, writ denied, 2012-1915 (La. 11/21/12), 102 So.3d 58.