ROSEMARY LEDET, Judge.
|, This is an expropriation suit. The Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (“LSU”) commenced this suit against Dixie Brewing Company, Inc. (“Dixie”), seeking to expropriate a parcel of property owned by Dixie. The purpose for the expropriation was to facilitate the development and construction of LSU’s new University Medical Center (“UMC”) *685 and the adjacent Veterans Affairs Medical Center (“VAMC”), in the Mid-City area of New Orleans. In response, Dixie filed a peremptory exception of res judicata. From the trial court’s decision denying Dixie’s exception, Dixie appeals. For the reasons that follow, we convert Dixie’s appeal to an application for supervisory writ, grant Dixie’s writ, but deny the requested relief.
FACTUAL AND PROCEDURAL BACKGROUND
This case has a complicated procedural history, which includes multiple filings in both state and federal court. The federal district court in Dixie Brewing Co., Inc. v. Department of Veterans Affairs, 2013 WL 6715921, pp. 1-2 (E.D.La.2013), summarized the background facts of this case as follows:
|2The City of New Orleans, LSU, and the VA entered into numerous agreements in which LSU agreed to invoke “quick-take” authority under Louisiana Revised Statute § 19:141 to assist New Orleans in making land available to the VA for its development of the medical center: LSU would expropriate the required land for both the LSU and VA sections of the complex, and then LSU would transfer a portion of the land to the VA. The designated area for the VA hospital is bordered by Galvez Street, Rocheblave Street, Canal Street, and Tulane Avenue. The Dixie Brewery Building, which at one time brewed the local Dixie beer, is located on a parcel at the corner of Rocheblave Street and Tulane Avenue. The Dixie property was not originally included in LSU’s expropriation efforts; but in February 2010, the site was added to the land slated for expropriation, spurring a torrent of state-court activity ever since.
The following is a chronological summary of the state-court activity pertinent to this appeal:
• April 29, 2010 — LSU filed'a Petition for Access to Property through Subpoena Duces Tecum for Inspection Prior to Filing of Expropriation and for Expedited Consideration (Civil District Court “CDC” No. 2010-4351) (“LSU’s Access Suit”). The purpose for LSU’s Access Suit was to állow LSU to inspect and evaluate the property to make the required offer of just compensation. The trial court granted LSU’s request for access.
• February 16, 2011 — Dixie filed a Petition for Temporary Restraining Order and Declaratory Judgment (CDC No. 2011-1602) (“Dixie’s TRO Suit”) the purpose of Dixie’s TRO Suit was to stop an unwarranted and allegedly unconstitutional expropriation. LSU answered Dixie’s TRO Suit and asserted affirmative defenses. Following a hearing, the trial court dismissed Dixie’s TRO Suit “with prejudice” on February 25, 2011.
• February 25, 2011 — Following the trial court’s dismissal of Dixie’s TRO Suit (on the same day), LSU filed its Petition for Expropriation (CDC No. 2011-2122) (“LSU’s Expropriation Suit”).
• July 8, 2011 — LSU filed a Motion to Transfer and Consolidate LSU’s Expropriation Suit with Dixie’s TRO Suit. The trial court granted this motion on August 11, 2011. This court denied Dixie’s writ application challenging that ruling. Board of Sup’rs of Louisiana State University, Agricultural and Mechanical College v. Dixie Brewery Co., Inc., 11-1339 (LaApp. 4 Cir. 9/27/11) (unpub.).
*686 [;• September 1, 2011 — Dixie filed a Peremptory Exception of Res Judi-cata, No Right of Action, and No Cause of Action .to LSU’s Expropriation Suit.[1] As to the res judicata exception, Dixie contended that the cause of action asserted in LSU’s Expropriation Suit existed and arose out of the same transaction or occurrence that was the subject matter of Dixie’s TRO Suit; thus, Dixie contended that LSU was required to assert its Expropriation Suit as a reconventional demand in Dixie’s TRO Suit. Dixie contended that LSU’s failure to do so resulted in LSU’s Expropriation Suit being barred by res judicata. (As noted below, this exception was ruled upon by the trial court on February 28, 2014; and this ruling is the subject of the instant appeal.)
• November 22, 2011 — The trial court granted Dixie’s Motion to Transfer and Consolidate Dixie’s TRO Suit and LSU’s Expropriation Suit with LSU’s Access Suit, which was the first filed CDC suit.[2]
• June 8, 2011 — Dixie filed a motion to dismiss LSU’s Expropriation Suit, challenging the constitutionality of LSU’s quick-take authority.[3]
• January 27, 2012 — Dixie filed its first post-expropriation injunction petition (“Dixie First Injunction Petition”). The trial court denied Dixie’s First Injunction Petition on February 7, 2012. Dixie did not seek review of this ruling.
• October 12, 2012 — Dixie filed its second post-expropriation injunction petition (“Dixie’s Second Injunction Petition”). LSU filed an exception of res judicata.
• November 16, 2012 — The trial court granted LSU’s exception of res judi-cata and dismissed Dixie’s Second Injunction Petition. Dixie appealed that decision. This court affirmed, and the Louisiana Supreme Court denied Dixie’s writ application. Board of Sup’rs of Louisiana State University, Agricultural and Mechanical College v. Dixie Brewing Co., Inc., 13-0250, 13-0251, 13-0252 (La.App. 4 Cir. 12/4/13), 131 So.3d 130, writ denied, 14-0007 (La.2/12/14), 132 So.3d 399 (hereinafter “Dixie I ”).
It* January 15, 2014 — Dixie filed a motion for expedited resetting of its earlier filed res judicata exception, which had been pending since September 1, 2011.
• February 28, 2014 — The trial court, following a hearing, denied Dixie’s res judicata exception for reasons orally assigned in court.
From the trial court’s ruling denying the res judicata exception, Dixie appeals. Before reaching the merits of the appeal, we first must address a jurisdictional issue.
APPELLATE JURISDICTION
Although the trial court granted Dixie’s Motion for Appeal, the February 28, 2014 judgment denying the exception *687 of res judicata is an interlocutory judgment under La. C.C.P. art. 1841. See Louisiana Local Government Environmental Facilities v. All Taxpayers, 11-0027, p. 13 (La.App. 1 Cir. 2/2/11), 56 So.3d 1194, 1200 (citing Tolis v. Board of Supervisors of LSU, 95-1529 (La.10/16/95), 660 So.2d 1206, 1207 (per curiam)). A party may appeal from an interlocutory judgment only when expressly provided by law. La C.C.P. art. 2083(C).[4] There is no express law permitting the appeal of a judgment denying an exception of res judicata; La. C.C.P. art. 1915 does not authorize a trial court to designate a judgment denying an exception as final. See Young v. City of Plaquemine, 04-2305, pp. 4-5 (La. App. 1 Cir. 11/4/05), 927 So.2d 408, 411. The proper procedural device to seek review of an interlocutory judgment is an application for supervisory writ. See La. C.C.P. art. 2083(C) and La. C.C.P. art. 2201; see also Delahoussaye v. Tulane University Hosp. and Clinic, 12-0906, 12-0907, p. 4 (La.App. 4 Cir. 2/20/13), 155 So.3d 560, 562, 2013 WL 633121 (citing La. C.C.P. art. 2201).
“[T]he decision to convert an appeal to an application for supervisory writs is within the discretion of the appellate courts.” Stelluto v. Stelluto, 05-0074, p. 7 (La.6/29/05), 914 So.2d 34, 39. This court has exercised its discretion to convert an appeal of an interlocutory judgment into an application for supervisory writ when the following two circumstances both are present:
1. The motion for appeal has been filed within the thirty-day time period allowed for the filing of an application for supervisory writs under Rule 4-3 of the Uniform Rules, Courts of Appeal.
2. When the circumstances indicate that an immediate decision of the issue sought to be appealed is necessary to ensure fundamental fairness and judicial efficiency, such as where reversal of the trial court’s decision would terminate the litigation.
Wadick v. General Heating & Air Conditioning, LLC, 14-0187, pp. 8-9 (La.App. 4 Cir. 7/23/14), 145 So.3d 586, 592-93 (citing Delahoussaye, 12-0906 at pp. 4-5; — So.3d at-).
Both circumstances are present here. Dixie’s motion for appeal was filed within the thirty-day period applicable to supervisory writs contained in Rule 4-3 of the Uniform Rules, Courts of Appeal; thus, an application for supervisory writ would have been timely. Second, reversal of the trial court’s ruling denying the peremptory exception of res judicata would effectively terminate the litigation. Moreover, converting Dixie’s appeal to a writ is consistent with the policy of expediting the trial and appeal of expropriation suits. See La. R.S. 19:8 (trial) and La. R.S. 19:159 (appeal). Converting Dixie’s appeal to a writ will therefore promote fundamental fairness and judicial efficiency. We thus exercise our ^discretion and convert the instant appeal of the judgment denying the exception of res judicata to an application for supervisory writ.
*688 DISCUSSION
The standard of review of an exception of res judicata requires an appellate court to determine if the trial court’s decision is legally correct or incorrect. Fletchinger v. Fletchinger, 10-474, p. 4 (La.App. 4 Cir. 1/19/11), 56 So.3d 403, 405; Myers v. National Union Fire Ins. Co. of Louisiana, 09-1517, p. 5 (La.App. 4 Cir. 5/19/10), 43 So.3d 207, 210; Insurance Co. of North America v. Louisiana Power & Light Co., 08-1315, p. 5 (La.App. 4 Cir. 3/4/09), 10 So.3d 264, 267. In Louisiana, the doctrine of res judicata is stricti juris; any doubt regarding the application of the doctrine must be resolved against its application. Fletchinger, 10-474 at p. 5, 56 So.3d at 406; Myers, 09-1517 at p. 5, 43 So.3d at 210; Insurance Co. of North America, 08-1315 at p. 7, 10 So.3d at 268.
“Res judicata in Louisiana is effected through code articles and statutes; effective Jan[uary] 1, 1991, that framework was amended by the Legislature to be more akin to federal and common law.” M. David Kurtz and Mark W. Frilot, Res Ju-dicata in Louisiana: A Synthesis of Competing Interests, 53 La. B.J. 445 (2006).
Louisiana’s res judicata statute is La. R.S. 13:4231, which provides:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are | extinguished and the judgment bars a subsequent action on those causes of action.
(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.
“When Louisiana law on res judicata was amended by enacting La. R.S. 13:4231, effective January 1, 1991, a companion statute, La. R.S. 13:4232, was also enacted to include ... exceptions.” Terrebonne Fuel & Lube, Inc. v. Placid Refining Co., 95-0654, p. 13, n. 4 (La.1/16/96), 666 So.2d 624, 632; see also Oliver v. Orleans Parish Sch. Bd., 14-0329, 14-0330, p. 33 (La.10/31/14), 156 So.3d 596, 618, 2014 WL 5507968 (citing Terrebonne Fuel, supra ).[5] The statute provides, in pertinent part, as follows:
*689 A. A judgment does not bar another action by the plaintiff:
(1) When exceptional circumstances justify relief from the res judicata effect of the judgment;
(2) When the judgment dismissed the first action without prejudice; or
(3) When the judgment reserved the right of the plaintiff to bring another action.
IsLa. R.S. 13:4232.
The pertinent two code articles implementing res judicata are La. C.C.P. art. 425 and La. C.C.P. art. 1061. Article 425 provides, in pertinent part, that “[a] party shall assert all causes of action arising out of the transaction or occurrence that is the subject matter of the litigation.” La. C.C.P. art. 425. Article 106 provides:
A. The defendant in the principal action may assert in a reconventional demand any causes of action which he may have against the plaintiff in the principal action, even if these two parties are domiciled in the same parish and regardless of connexity between the principal and reconventional demands.
B. The defendant in the principal action, except in an action for divorce under Civil Code Article 102 or 103 or in an action under Civil Code Article 186, shall assert in a reconventional demand all causes of action that he may have against the plaintiff that arise out of the transaction or occurrence that is the subject matter of the principal action.
La. C.C.P. art. 1061.
The jurisprudence has recognized that a peremptory exception of res judica-ta is the proper procedural vehicle to enforce the mandate of Articles 425 and 1061, which bar claims that were or could have been litigated in a prior lawsuit. See Horacek v. Watson, 06-210, p. 3 (La.App. 3 Cir. 7/5/06), 934 So.2d 908, 910 (quoting Walker v. Howell, 04-246, p. 2 (La.App. 3 Cir. 12/15/04), 896 So.2d 110, 112). “Prior litigation of an issue is not required in order for a cause of action to be barred by res judicata.” Henkelmann v. Whiskey Island Preserve, LLC, 13-0180, p. 6 (La. App. 1 Cir. 5/15/14), 145 So.3d 465, 470.
Five elements must be met to preclude a second action under the theory of res judicata; the five elements are as follows:
ln(l) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation.
Burguieres v. Pollingue, 02-1385, p. 8 (La.2/25/03), 843 So.2d 1049, 1053.
In this case, the first three elements are undisputed—the judgment dismissing Dixie’s TRO Petition was a valid, final judgment dismissing the petition “with prejudice,” and the parties to LSU’s Expropriation Suit and Dixie’s TRO Petition are the same. The trial court found the fourth element was not met because LSU’s expropriation cause of action had not yet accrued.[6] Dixie and LSU dispute *690 whether the fourth and fifth elements are met.[7] Because we find the exception codified in La. R.S. 13:4282 A(l) for exceptional circumstance applies, we find it unnecessary to reach the issue of whether the fourth and fifth elements are met. We separately address the procedural and substantive reasons for our holding that the exception applies.

Procedural reasons

 The jurisprudence has recognized that the exception for exceptional circumstances, codified in La. R.S. 18:4232 A(1), applies “to complex procedural situations in which litigants are deprived of the opportunity to present their claims due to unanticipated quirks in the system.” Davis v. J.R. Logging, Inc., 13-0568, p. 6 (La.App. 1 Cir. 11/8/13), 136 So.3d 828, 832 (citing McGregor v. Hospice Care of Louisiana in Baton Rouge, LLC, 09-1357, pp. 11-12 (La.App. 1st Cir.2/12/10), 36 So.3d 272, 279). In the McGregor case, the defendants contended, based on a judgment rendered in a previous contract suit between the parties, that the plaintiffs’ claims in their malpractice suit were precluded by res judicata. The plaintiffs countered that the exceptional circumstances exception should be applied given the appellate court had determined on a previous writ application that consolidating the two matters — the medical malpractice and the contract suit — for trial was improper because it would lead to jury eonfusion, and the court ordered that the two cases be maintained as separate suits. 09-1357 at p. 11, 36 So.3d at 279. Agreeing with the plaintiffs, the appellate court stated:
We note that our prior decision on the supervisory writ addressed consolidation of the two actions for trial under La. C.C.P. art. 1561. However, because this court specifically ordered that the actions be remanded to the trial court to be ■ maintained as separate suits, we agree with plaintiffs that it would be unjust to now find the medical malpractice claim is barred by res judicata. Accordingly, we find that based on the unique facts of this case, and in the interest of justice, exceptional circumstances exist justifying relief from the res judicata effect of the prior judgment in the contract suit.
McGregor, 09-1357 at p. 12, 36 So.3d at 280.
Similarly, this court in Simmons v. Baumer Foods, Inc., 09-1739, p. 4 (La.App. 4 Cir. 10/6/10), 55 So.3d 789, 792, found that the unique facts of the case warranted the application of the exceptional circumstances exception. Explaining In the procedural and substantive reasons that warranted the application of the exception, the concurring judge in the Simmons case stated:
*691 Substantively, the civil remedy the plaintiffs are seeking to pursue is a unique one. Indeed, a commentator has labeled the remedy as a “comptort”— the remedy available for injuries arising out of a workplace setting that are not covered by the Workers’ Compensation Act because of either legislative or judicial narrowing of the compensation remedy. ...
[T]he plaintiffs in this case do not have a compensation claim against Bau-mer Foods and Task Force because they cannot satisfy the heightened burden of proof by clear and convincing evidence that Mrs. Simmons’ heart attack was compensable under La. R.S. 23:1021(8)(e). Because the Legislature has eliminated the plaintiffs’ compensation remedy by raising the burden of proof, they are entitled to a remedy in tort.
Procedurally, until the WCJ found the plaintiffs could not satisfy the heightened burden of proof for a compensation claim, they were barred by the workers’ compensation exclusivity rule from pursuing a tort claim. Due to the limited jurisdiction of the respective forums (CDC and OWC), the plaintiffs were precluded from cumulating their tort and workers’ compensation claims.... The plaintiffs were required to bring each claim in a different forum. Although the plaintiffs have done so, they have had their claim dismissed in both forums. Neither forum reached the merits of the plaintiffs’ claim that the employer was negligent in failing to administer first aid and failing to call for emergency help. The plaintiffs thus have not had the opportunity to litigate their claim in any forum.
Simmons, 09-1739 at p. 9, 55 So.3d at 794-95 (Murray, J., concurring).
In Simmons, swpra, this court also noted:
There is statutory recognition that application of the doctrine of res judicata in all circumstances would be unfair. Specifically, La.Rev.Stat. 13:4232(A)(1) provides that a judgment does not bar another action by the plaintiff “[w]hen exceptional circumstances justify relief from the res judicata effect of the judgment.” Moreover, the comments accompanying La.Rev.Stat. 13:4232 make clear that [tjhis court has the authority under the statute to exercise its equitable discretion to balance the principle of res judicata with the interests of justice, although clearly “this discretion must be exercised on a case by case basis and such relief should be granted only in truly exceptional cases ...”

il$d.

Recently, the Louisiana Supreme Court in Oliver v. Orleans Parish Sch. Bd., 14-0329, 14-0330 (La.10/31/14), 156 So.3d 596, 2014 WL 5507968, addressed the application of the exceptional circumstances exception. In that case, the Supreme Court found that the exception did not apply because none of the factors stated in the Restatement (Second) of Judgments, § 26 (1982) was present. Unlike in Oliver, supra, in both Simmons and McGregor at least one of the factors was present — factor (f), which provides “it is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason.” Restatement (Second) of Judgments, § 26 (1982). For the reasons discussed below, we find that factor likewise was present in this case.
Implicit in the concept of res judicata is that a party “had the opportunity to raise a claim in the first adjudication, but failed to do so.” Jackson v. Iberia Parish Government, 98-1810, p. 9 (La.4/16/99), 732 *692 So.2d 517, 524. LSU contends that the exceptional circumstances exception should be applied because it was judicially denied the opportunity to raise the expropriation claim in Dixie’s TRO Suit. Given it was not given an opportunity in Dixie’s TRO Suit to assert its expropriation claim, LSU contends that the exception should apply. We find this argument persuasive.[8]
| i3In this case, the trial court, agreeing with LSU, found that LSU could not have filed its expropriation suit as a reconven-tional demand in Dixie’s TRO Suit without violating Dixie’s TRO. The TRO included the following order: “[LSU] be and is hereby restrained and prohibited from using ‘quick take’ authority to attempt to take Square 556 [the Dixie Parcel] for the City of New Orleans or to satisfy the obligations of the City of New Orleans.” Dixie acknowledges that an “executed” expropriation suit would have violated the TRO, but it contends that “filing” the expropriation suit would not have violated the TRO. Stated otherwise, it contends that the TRO “temporarily enjoined an executed expropriation suit, not the obligation to file for an expropriation suit under Article 1061.” Dixie thus contends that the trial court’s finding was erroneous and that LSU was required to assert its expropriation suit as a reconventional demand to Dixie’s TRO suit.
LSU counters that “[t]here is no middle-ground provided in the enabling statute for a ‘filed’ but not ‘executed’ expropriation by the Board.” LSU points out that Dixie’s contention contradicts controlling substantive law, La. R.S. 19:144. LSU thus contends that the trial court correctly found it was precluded from filing the expropriation suit as a reconvention demand in the TRO Suit. We agree. Simply stated, “[t]he quick-taking procedure vests title simultaneously with the filing of the suit, signing of the ex parte order by the judge, and deposit of the estimated compensation due the condemnee.” Melvin G. Dakin and Michael R. Klein, Eminent Domain in Louisiana 295 (1970). As we noted in Dixie I, the effect of LSU invoking the quick-taking statute is as follows:
| i4La. R.S. 19:144 provides that upon the filing of the petition for expropriation, the court shall issue an ex parte order directing that the amount of the estimated compensation (which amount is required to be included in the petition) be deposited into the registry of the court. La. R.S. 19:145 further provides that once that amount is deposited, “title to the property and property rights specified in the petition shall vest in the plaintiff [the expropriating authority]”
Dixie I, 13-0250 at pp. 7-8, 131 So.3d at 135. The trial court thus did not err in finding that LSU was prohibited by the TRO from filing its expropriation suit as a reconventional demand in Dixie’s TRO Suit.
Given that LSU was precluded judicially by the TRO that Dixie obtained from filing an expropriation claim in Dixie’s TRO Suit, it would be illogical and inequitable to find *693 that LSU was barred by the doctrine of res judicata from bringing its expropriation suit. See McGregor v. Hospice Care of Louisiana in Baton Rouge, L.L.C., 09-1857, p. 12 (La.App. 1 Cir. 2/12/10), 36 So.3d 272, 280 (reasoning that “because this court specifically ordered that the actions be remanded to the trial court to be maintained as separate suits ... it would be unjust to now find the medical malpractice claim is barred by res judicata ”). We thus find the exceptional circumstances exception, codified in La. R.S. 13:4232 A(1), applies.

Substantive reasons

The trial court, in denying Dixie’s exception, noted a substantive reason for its decision; specifically, the trial court noted that “as in Terrebonne Parish Police Jury v. Kelly, [428 So.2d 1092, 1093 (La.App. 1st Cir.1983) (the “Terrebonne case”),] even assuming the TRO filed by Dixie was broad enough to enjoin the expropriation of the property, Dixie Brewing cannot stop the Board of LSU from exercising its constitutional right to expropriate the property.” On appeal, Dixie acknowledges that the Terrebonne case presents an “ostensible hurdle” to its 11sargument. Nonetheless, Dixie contends that the Terrebonne case should not be applied in this case for the following three reasons: (i) the Terrebonne ease is not binding on this court, (ii) the Terrebonne case is in direct conflict with this court’s holding in Dixie I, and (iii) the Terrebonne case is not authorized by specific statutory exception to the res judicata rule. All three of Dixie’s contentions are unpersuasive.
First, contrary to Dixie’s contention, this court recently followed the Terrebonne case in Hooper v. Hero Lands Co., 13-0576 (La.App. 4 Cir. 12/11/13), 128 So.3d 691. In Hooper, we summarized the facts and holding of the Terrebonne case as follows:
In Terrebonne, the parish police jury failed to secure a right-of-way before excavating a drainage canal over the Kellys’ land. 428 So.2d at 1093. The Kellys filed suit and were successful in having their possession recognized, having the police jury enjoined from disturbing their possession, and having the police jury ordered to fill in the ditch within six months. Before the expiration of the six month period, the police jury filed an expropriation suit without seeking modification of the injunction. Id. On appeal, the Kellys argued that the injunction prohibited the police jury from disturbing their peaceable possession by filing an expropriation suit. Id. The appellate court, however, found that the Louisiana constitution and laws grant parish governing authorities the power to expropriate private property for public purposes. Id. In so finding, the appellate court held that the police jury could not be enjoined from bringing a suit that it had a right to bring. Id.; Mutter v. Landry, 170 So.2d 922 (La. App. 3rd Cir.1965) (cf. Lenfants Caterers, Inc. v. Firemen’s Charitable and Benevolent Association of New Orleans, 386 So.2d 1053 (La.App. 4th Cir.1980) (tenant could not prevent the filing of an eviction suit through an injunction)).
Hooper, 13-0576 at pp. 9-10, 128 So.3d at 697-98. In Hooper, this court rejected the Hoopers’ attempt to distinguish the Terre-bonne case factually and applied the Terre-bonne holding.[9] In so doing, we concluded as follows:
*694 |1BBy analogy to the Terrebonne case, in this case the Hoopers obtained a preliminary injunction by a consent judgment enjoining PPG from interfering with their property. BCDD, through PPG, filed an expropriation suit for that same property. Although PPG obtained permission from the trial judge to suspend the injunction to file suit, such permission was not required. As the Terrebonne case held, a party who has a right to bring suit, such as a drainage district, cannot be enjoined from bringing such suit.
Hooper, 13-0576 at pp. 10-11, 128 So.3d at 698. Thus, this court has adopted the holding in the Terrebonne case.
Dixie next contends that the Terrebonne case conflicts with this court’s holding in Dixie I that res judicata may effectively prevent the exercise of constitutional rights. The gist of Dixie’s contention is that it would be unfair to apply res judica-ta to it in Dixie I, but not to apply res judicata to LSU in this case. LSU counters that Dixie misstates the issue. According to LSU, the issue is not whether res judicata may apply to constitutional rights, but whether Dixie’s TRO Suit could prohibit LSU from exercising its constitutional and statutory rights to expropriate property for a public purpose. We agree.
Dixie’s reliance on Dixie I is misplaced. Dixie I involved entirely different factual and procedural issues than the issues presented in this case. In Dixie I, the issue was whether res judicata applied to bar Dixie’s second post-expropriation injunction petition, “praying for exactly the same relief as it had in the first [post-expropriation injunction] petition.” Dixie I, 13-0250 at p. 3, 131 So.3d at 132. Answering that question in the affirmative, we cited Cooper v. Federal Land Bank of New Orleans, 197 So. 822, 824-25 (La.App. 1st Cir.1940), for the proposition that res judi-cata prevents a party from seeking multiple injunctions for the same purpose against the same opponent. Particularly, we quoted the following language from Cooper.
Where the plaintiff is aware of other grounds for an injunction other than those set up in his petition to prevent a sale of his property, he cannot in a subsequent suit filed for the same purpose avail himself of the grounds which he knew of at the time of filing his first suit. Courts look with disfavor on a multiplicity of suits to attain a purpose that can be fully litigated in one suit, and thus prevent a person from being annoyed and harassed by several suits designed to secure one particular form of relief.
Dixie I, 13-0250 at p. 5, 131 So.3d at 134 (quoting Cooper, 197 So. at 824). We concluded that the causes of action asserted by Dixie in the first and second post-expropriation injunction petitions arose from the same transaction or occurrence— LSU’s alleged unconstitutional transfer of Dixie’s property to the V.A. We further reasoned that the cause of action Dixie asserted in its second post-expropriation injunction petition not only existed, but also was asserted in its first post-expropriation injunction petition.
Unlike in Dixie I, which involved two injunction petitions, this case involves an *695 expropriation suit. Contrary to Dixie’s contention, expropriation suits are unique. Expropriation is defined as the “authorized use of judicial coercion to compel the transfer of existing property rights conditioned upon the prior payment of compensation.” Melvin G. Dakin and Michael R. Klein, Eminent Domain in Louisiana 3 (1970). The power to expropriate is eo instante — exists as long as does 11Hthe government. Tennessee Gas Transmission Co. v. Violet Trapping Co., 248 La. 49, 84, 176 So.2d 425, 438 (1965) (holding that the power to expropriate is “inherent in all government, coming into being Eo in-stante with the establishment of the government and continuing as long as the government endures, and does not require recognition by constitutional provision for its existence.”) Moreover, the Terrebonne case stands for the proposition that a party cannot be barred from bringing an expropriation suit that it has the constitutional right to bring.
Dixie’s final contention is that there is no constitutional right exception to the statutory and codal articles implementing res judicata. Although there is no constitutional right exception to the res judicata rule, the res judicata rule is not ironclad. Indeed, the Louisiana Supreme Court has admonished that “[w]hile res judicata is a useful tool, it should not be used as a scythe applied mechanically to mow down claims where the party asserting the claim is not at fault for the lack of adjudication of that claim in the first suit.” Placid Refining, 95-0654 at pp. 19-20, 666 So.2d at 635.[10] As noted, the Legislature codified in the res judicata statutory provision exceptions to the res judicata rule.
In sum, we find the exception to the res judicata rule, codified in La. R.S. 13:4232 A(1), applies in this ease, which is both substantively and procedurally exceptional. See Simmons, 09-1739 at p. 9, 55 So.3d at 794 (Murray, J., concurring) (finding the exception applicable in that case, which was “exceptional both procedurally and substantively”).
DECREE
lisFor the foregoing reasons, we convert Dixie’s appeal of the denial of its peremptory exception of res judicata to an application for supervisory writ, grant Dixie’s writ application, but we deny the relief requested.
APPEAL OF DENIAL OF PEREMPTORY EXCEPTION OF RES JUDICA-TA CONVERTED TO SUPERVISORY WRIT; WRIT GRANTED; RELIEF DENIED.

. Dixie filed its peremptory exceptions in Dixie’s TRO Suit, which at that juncture had been consolidated with LSU’s Expropriation Suit.

. In its motion to transfer, Dixie alleged that the three cases deal with the same two parties and not only have very similar and common issues of law and fact, but the very same issues of law and fact in that they relate to the same cause and transaction and occurrence between LSU and Dixie — the expropriation of the same property.

.As of the date this appeal was filed, Dixie’s motion to dismiss was still pending. Indeed, a different panel of this court denied Dixie’s motion to stay the trial court’s consideration of the motion pending this court's ruling on the instant appeal.

. The jurisprudence has recognized an exception in the following context: "when an unrestricted appeal is taken from a final judgment, an appellant is entitled to seek review of all adverse interlocutory judgments prejudicial to him in addition to the review of the final judgment." Olsen v. Olsen, 12-737, p. 4, n. 1 (La.App. 5 Cir. 3/13/13), 113 So.3d 274, 277 (citing Louisiana Local Government Environmental Facilities v. All Taxpayers, 11-0027 (La.App. 1 Cir. 2/2/11), 56 So.3d 1194, 1200; Territo v. Schwegmann Giant Supermarkets, Inc., 95-257 (La.App. 5 Cir. 9/26/95), 662 So.2d 44, 46). The only judgment from which an appeal was taken in this case is the denial of the exception of res judicata. This exception is thus inapplicable.

. Explaining the exceptions to res judicata, the Louisiana Supreme Court in Terrebonne Fuel & Lube, Inc. v. Placid Refining Co., 95-0654, p. 13 (La. 1/16/96), 666 So.2d 624, 632, noted:
Although rarely mentioned, exceptions exist to the common law theory of res judi-cata, as noted in the Restatement (Second) of Judgments, § 26 (1982). These exceptions involve “exceptional circumstances” as where (a) the parties have agreed that the plaintiff may split his claim, or the defendant has acquiesced therein; (b) the court in the first action has expressly reserved the plaintiff’s right to maintain the second action; (c) there are restrictions on the subject matter jurisdiction of the courts; (d) the judgment in the first action was plainly inconsistent with the fair and equitable implementation of a statutory or constitutional scheme; (e) for policy reasons; or (f) it is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason. Restatement (Second) of Judgments, § 26 (1982), pg. 233-234.
*689 These examples of exceptional circumstances were also cited by the Louisiana Supreme Court in Oliver v. Orleans Parish Sch. Bd., 14-0329, 14-0330, p. 33 (La. 10/31/14), 156 So.3d 596, 618, 2014 WL 5507968.

. In its oral reasons for judgment, the trial court stated:
[T]his Court finds that the merits of LSU's expropriation action were never adjudicated in Dixie Brewing's petition or declaratory judgment, temporary restraining *690 order, and preliminary and permanent injunctions, prohibiting the board from using "quick take” authority to attempt to take Square 556 for the City of New Orleans, which was granted by the Court. After hearing the merits of the injunction, the Court denied Dixie Brewing’s relief. Accordingly, it thus follows that LSU cannot be precluded from subsequently bringing its expropriation action when the cause of action asserted in the second suit had -not accrued. Because Requisite Element No. 4 is lacking pursuant to Louisiana Revised Statute 13:4231, Dixie has failed to establish all essential elements under the doctrine of res judicata beyond all question.

. On appeal, Dixie asserts that the trial court erred in failing to find that LSU’s cause of action had fully accrued and thus "existed” for purpose of res judicata well before LSU’s answer to Dixie's petition. LSU counters that its expropriation cause of action did not exist or accrue until it filed its expropriation suit. LSU contends that until the petition is filed, there is no event that triggers the accrual of an expropriation cause of action.

. See Jackson v. Iberia Parish Government, 98-1810, p. 9 (La.4/16/99), 732 So.2d 517, 524 (holding that "inherent in the concept of res judicata is the principle that a party had the opportunity to raise a claim in the first adjudication, but failed to do so”); Benton, Benton and Benton v. Louisiana Public Facilities Authority, 95-1367, p. 3 (La.App. 1 Cir. 4/4/96), 672 So.2d 720, 722 (noting that “[u]nder federal law, res judicata does not apply unless the party claimed to be barred had a 'full and fair opportunity' to litigate the claim in the first action”); see also James Wm. Moore, Moore's Federal Practice Third Edition § 131.41[1] (2014) (noting that “[e]ven if all of the other prerequisites for claim preclusion are met, it will not be applied if the party against whom the prior judgment is asserted did not have a full and fair opportunity to litigate the claim in the prior proceeding”).

. As to the Hoopers' attempt to distinguish the Teirebonne case, we noted:
The Hoopers contend that Terrebonne is distinguishable from this case because in Terrebonne there was only one person claiming ownership and possession, where as in this case two parties are claiming ownership. Regardless of who owns the *694 property, BCDD still has the right to file an expropriation suit. BCDD filed the expropriation petition against both the Hoopers and Hero Lands Company; thus, both parties will be given notice and an opportunity to be heard. Furthermore, whoever is de-dared the rightful owner will obtain the funds BCDD put in the court’s registry. We thus find the Hoopers attempt to distinguish the Terrebonne case unpersuasive. Hooper, 13-0576 at p. 10, 128 So.3d at 698.

. LSU enumerates three reasons why it contends it was not at fault for not adjudicating its expropriation cause of action in Dixie's TRO Suit, which are as follows: (i) it provided notice in the Petition for Access that it planned to file the Expropriation Suit, once all the prerequisite activities were completed; (ii) it was prohibited from filing the Expropriation Suit by the TRO Dixie obtained; and (iii) it had not yet moved to expropriate the subject property.