<hr />

THOMAS MULLIGAN *v.* DANIEL MULLIGAN.

Every mechanic, workman, or other person, doing or performing any work towards the erection, construction or finishing of any building in this State, erected under a contract between the owner and builder, or other person, whether such work shall be performed as journeyman, laborer, cartman, sub-contractor or otherwise, shall have a privilege upon the building.

APPEAL from the Third District Court of New Orleans, *Duvigneaud,* J. *Clarke & Bayne,* for defendant and appellant.

*M. Grivot and A. Pitot, for plaintiff.*—The law says : "Every mechanic, workman or other person performing any work towards the erection, construction or furnishing," etc. If the lawgiver had to name all capacities of persons who may be employed by a contractor, the omission of one would have had the effect of depriving that one of a privilege which it was the intention of the Legislature to confer upon him ; and it is evident that the phraseology intended to secure such privilege to all those employed by the contractor in the erection of the building. If it were to apply only and exclusively to mechanics and workmen, it was useless to insert the words "or other person." Certainly, those words do not mean mechanics or workmen, who are already specially named, but must necessarily apply to persons not mechanics nor workmen, viz : "any other performing any work towards the erection of the building." Unless it be maintained that a superintendent who orders the work in every part of the building, examines the materials furnished, corrects the errors made, and in fact supervises the whole work, is not performing some work towards the erection and construction of a building, I cannot understand the objection made to the privilege awarded by the judgment. Under the point made by the defendant it would be necessary to be a mechanic or a workman of the lowest grade, and then the words "other person," in the law, become void of sense and of no effect.

The statute uses other words which would also have to be cancelled and annulled. It says : "Whether such work shall be performed as journeyman, laborer, cartman, sub-contractor or otherwise." We see here that the sub-contractor is included ; certainly he is not bound to work as a bricklayer or a carpenter ; he may be sub-contractor, and have the work

done by mechanics and workmen ; therefore, the law is not solely in favor of mechanics and workmen. But again, here, instead of a nomenclature of all the persons who may be employed, the law says : whether the work be done as sub-contractor or otherwise. Certainly, the superintendent is performing work towards the erection of the building, otherwise than those named, it is true, but much more in accordance with the meaning of the law than the sub-contractor, who may never put his hand to the work contracted for. Such an interpretation would be going too far, principally when there is no straining of the interpretation of the words, "or other person" and "otherwise," in their application to the superintendent of a building, employed by the contractor, and upon whom he places all the responsibility of the work done for him.

In the suit of *Hogg* v. *Taliaferro*, 10 A. 562, the case was that of a foreman. The foreman is not named in the statute. The foreman, on a large building, from what we all know of his various duties, may not effectually work with his hands on the building. He is not, however, deprived of the privilege. Why would a man, having a more extensive supervision and a much more heavier responsibility, be deprived of the same right when he renders services of the same character, under a law which, after naming mechanics and workmen, says : "any other person," whether such work be done by so and so, "or otherwise."

The law was made to protect all persons working under the contractor and looking to him for the payment of their services. Any exclusion of any such persons, not specially named, would be unjust, and unwarranted by the principles relative to the interpretation of laws.

"A construction which would render important expressions of the law useless and of no effect cannot be adopted ; effect must be given, if possible, to every expression." Hennen's Digest, p. 829, No. 5, cases cited.

"Even when a law is clear and unambiguous, the letter may be disregarded with the honest intention of seeking its spirit." Hennen's Digest, p. 830, No. 19, cases cited.

"In the interpretation of a statute, the intention of the law is to be deduced from a view of the whole, and of every part of the statute, taken together." Hennen's Digest, p. 832, No. 31.

"A statute must be construed with reference to its object, and if this be inconsistent with the precise words of the statute, the latter must yield to the controlling influence of the will of the Legislature resulting from the whole." Hennen's Digest, p. 832, No. 40.

LABAUVE, J. The plaintiff claims of the defendant the sum of $2,010, with interest ; for this : that, in November or December, 1857, Ellen Sheridan, know in religion by the name of Sister Theresa, Superioress of the Society of St. Vincent de Paul, and others, undertook to erect a hospital in this city, under the name of Hotel Dieu, and made arrangements with said Daniel Mulligan for the building of said hospital ; it being understood at the time that petitioner should have the supervision of, and

give his professional attention to the erection of said building, either in the capacity of partner or as sole-superintendent ; that petitioner gave his attention as architect and builder to the erection and construction of said building during one year, three months and fifteen days, at the rate of five dollars per day, exclusive of Sundays.

The defendant answered by a general denial. The District Court, after hearing the testimony, gave judgment in favor of plaintiff for $1,905, without interest, with mechanic's privilege on the money seized in the hands of Sister Theresa.

The defendant appealed.

The testimony shows that plaintiff was generally present at the work and erection of the said building, called Hotel Dieu, giving instructions to workmen and supervising the construction. It appears, then, that the plaintiff acted as superintendent; but it is not clearly demonstrated when he commenced and ended his labor, so as to allow him five dollars per day for 381 days, it being proven, by some witnesses, that five dollars per day is generally the compensation granted to superintendents of buildings. The testimony is not satisfactory in every respect, and we do not feel authorized to allow plaintiff a compensation by the day. We will adopt the testimony of John Roy and George Purves. They both state that five per cent. on the cost of the building is an ordinary charge as a compensation for a superintenden ·' the erection of buildings. According to the contract, the cost of the building was $33,975, making a compensation of $1,698 75.

The defendant has contended that the plaintiff has no privilege or mechanic's lien as superintendent. We are not of that opinion. The act of 1855, § 1, enacts that "every mechanic, workman, or *other person*, doing or performing any work towards the erection, construction or finishing of any building in this State, erected under a contract between the owner and builder, or *other person*, whether such work shall be performed as journeyman, laborer, cartman, sub-contractor or *otherwise*." * * * * This law is very clear in spirit and letter, and leaves no doubt as to the intention of the lawmaker.

It is therefore ordered and adjudged that the judgment of the District Court be reversed and annulled; *it is further* ordered and adjudged that the defendant and appellant pay to the plaintiff and appellee the sum of sixteen hundred and ninety-eight dollars and seventy-five cents, with legal interest from the 2d September, 1859, till paid, with mechanic's privilege or lien on the money seized in the hands of Sister Theresa, the defendant to pay the costs in the District Court, and those of appeal to be by the plaintiff.