SARTAIN, Judge.
This is a mandamus proceeding instituted by Gauguin, Inc. against Alsay Addison, Clerk of Court of Livingston Parish, John W. Spring and Spring’s Thunder Agency, Inc. wherein relator seeks to obtain an order directing the Clerk of Court to cancel and erase from the mortgage records of Livingston Parish a lien filed by John W. Spring and Spring’s Thunder Agency, Inc.
The lien in question was filed on February 23, 1973. Said lien is in the form of an affidavit wherein John W. Spring alleges that Gauguin, Inc. is indebted unto him in the amount of $71,260.00 for work, labor and services allegedly performed by John W. Spring and Spring’s Thunder Agency, Inc. on certain immovable property owned by Gauguin, Inc. in Livingston Parish. Subsequent to the filing of this lien Gauguin, Inc. filed suit on March 7, 1973 against John W. Spring and Spring’s Thunder Agency, Inc. seeking cancellation of the lien. On May 17, 1973 John W. Spring and Spring’s Thunder Agency, Inc. filed a suit against Reed Erickson and Gauguin, Inc. seeking recovery of the amounts allegedly due and represented by the lien. These two suits were consolidated for trial and are apparently still pending in the district court.
Our decision in this cause in no way affects the rights of John W. Spring and Spring’s Thunder Agency, Inc. on quantum meruit, upon a showing of the value of services allegedly rendered Gauguin, Inc. The essence of respondents’ claims here are that they are entitled to the real estate commissions they would have earned had they remained the exclusive agents for the sale of the lots within the subdivision.
On June 4, 1973, Gauguin, Inc. filed this suit for writ of mandamus seeking to compel erasure and cancellation of the lien. The trial court issued alternative writs directing respondents to either cancel the lien or show cause why the lien should not be cancelled. On June 7, 1973, John W. Spring and Spring’s Thunder Agency, Inc. filed a declinatory exception of lis pendens and a peremptory exception of res judica-ta. Hearing on the rule to show .cause and on the exceptions was held on June 22, 1973. The trial court rendered judgment in favor of respondents and dismissed relator’s suit. From that judgment Gauguin, Inc. brings this suspensive appeal.
Relator contends that the trial court erred in dismissing its suit and argues that the lien should be ordered cancelled because John W. Spring and Spring’s Thunder Agency, Inc. are not persons entitled to a lien under the provisions of L.R.S. 9:4801. In the alternative, relator asserts that said ljen was not timely filed.
Respondents contend initially that the exception of lis pendens should have been maintained and relator’s suit dismissed on the grounds that another suit between the same parties, on the same cause of action and having the same object as the present suit was and is still pending in the same court.
The trial judge did not assign oral or written reasons for judgment. Neither the minute entries in the record nor the judgment dismissing relator’s suit mentions any ruling on the exceptions. Therefore, we must review the record in its entirety in order to ascertain whether or not the result reached by the district court is in itself manifestly erroneous. Martin v. Farkas, 241 So.2d 272 (1st La.App.1970).
C.C.P. Articles 3862 and 3863 provide that the writ of mandamus may be issued in all cases where the delay in obtaining ordinary relief may cause injustice. Mandamus has been held to be the proper remedy for compelling a recorder of mortgages to cancel or erase an illegal or unauthorized inscription. Realsco, Inc. v. Green Acres Civic Association, 169 So.2d 570 (4th La.App.1964); State ex rel. Bond v. Register of Conveyances, 162 La. 362, 110 So. 559 (1926). It has also been observed that since an improper or illegal lien recorded against immovable property *895 will hamper the owner in efforts to encumber or sell the property, it would be an injustice to require the owner in all such cases to await the outcome of ordinary proceedings to cancel the lien. State ex rel. Henry v. 8 — Mile Post Plumbing Supplies, Inc., 63 So.2d 749 (Orl.App.1953). Accordingly, we do not find mandamus precluded herein by the pendency of the other suits concerning this lien. See: State ex rel. Metropolitan Land Co. v. Recorder of Mortgages, 166 La. 271, 117 So. 145 (1928).
As to the merits of the case, relator asserts that John W. Spring and Spring’s Thunder Agency, Inc. are not persons entitled to a lien under L.R.S. 9:4801.- That statute provides in pertinent part as follows :
“A. Every contractor, subcontractor, architect, engineer, registered land surveyor, master-mechanic, mechanic, cart-man, truckman, workman, laborer or fur-nisher of material, machinery or fixtures, exclusive of anyone who rents or leases movable property, who performs work or furnishes material for the erection, construction, repair or improvement of immovable property, or who furnishes material or supplies for use in machines used in or in connection with the erection, construction, repair or improvement of any building, structure or other immovable property, with the consent or at the request of the owner thereof, or his authorized agent or representative or of any person with whom the owner has contracted for such work, has a privilege for the payment in principal and interest of such work or labor performed, or the materials, machinery or fixtures furnished, and for the cost of recording such privilege, upon the land and improvements on which the work or labor has been done, or the materials, machinery or fixtures furnished.”
On the other hand, respondents contend that they are persons entitled to a lien under the statute and specifically emphasize that portion of the statute granting a lien to the workman or laborer who has performed work on immovable property.
In order to ascertain if respondents are persons entitled to a lien we must attempt to characterize the nature of the work allegedly performed by them on the property and determine in what capacity said work was performed.
The deposition of John W. Spring was entered in evidence in the trial court and is a part of this record. John W. Spring characterized his business as follows:
“Q. I see. Now what is your educational background?
A. High school.
Q. You are not an engineer and architect?
A. No.
Q. And you’ve never held yourself out as an engineer and architect ?
A. No.
Q. Are you a contractor ?
A. Certain — I’m affiliated with certain aspects of contracting, such as building a house, taking a bid, and then letting another contractor build the house; in other words, subcontracting, but I only did that on a couple of occasions.
Q. Well, would you say that you have been a speculative builder in a sense ?
A. Not in the sense that you would call me a builder; primarily real estate solely. I resisted the building because it’s too many headaches.
Q. In other words, basically you make your living on real estate commissions.
A. That’s correct, buying and selling, and developing subdivisions.”
*896 Mr. Spring further testified that as a real estate agent he aided Mr. Reed Erickson, president of Gauguin, Inc., in obtaining the subject property. After acquisition of the property the feasibility of developing a subdivision was discussed and Mr. Spring was asked to perform various services in connection with the development of the property. According to Mr. Spring’s testimony he performed the following services from approximately May of 1969 through October 18, 1972 in developing this property: he aided Mr. Erickson in obtaining a road through the property; he exerted efforts to halt dumping on the property, he inspected the property to determine if a subdivision was feasible, he entered into negotiations with Gulf States Utilities and Dixie Electric Membership Corporation which lead to a contract between Mr. Erickson and Dixie Electric for the installation of electricity lines on the property, he aided in obtaining a subdivision plat from a surveyor, he inspected the work of Cooper Dozer Service which did some clearing on the property for Dixie Electric, he negotiated a contract with Sharkey Dozer Service for roads and culverts in the subdivision, he negotiated for the installation of water lines and ditching, and he negotiated a dispute over the location of a fence.
Mr. Spring stated that during the course of the development of this subdivision it was understood that his real estate firm would be given exclusive listing rights at the time the subdivision was completed. However, due to his illness and hospitalization during October of 1972 his services were terminated. By letter dated October 18, 1972, Mr. Reed Erickson stated that due to Mr. Spring’s illness it was necessary that his services be terminated and that Gauguin, Inc. would use its own personnel to supervise the development of the subdivision. Mr. Spring stated that at that time the subdivision was somewhere between seventy and eighty percent complete.
By dismissing relator’s suit the trial court apparently recognized respondents as persons entitled to a lien on the property. Our review of the evidence discloses that this determination was in error.
In our view, respondents do not fall within any of the listed categories of persons under L.R.S. 9:4801 entitled to a lien. The services allegedy performed by Mr. Spring and Spring’s Thunder Agency were not services performed on the property by a workman or laborer so as to entitle them to a lien under the statute. At best the services allegedly performed by respondents were those customarily considered to be performed by a general contractor in the development of a subdivision.
In the case of State ex rel. Bagur Co., Inc., et al. v. Christy-Ann-Lea Corporation, 223 So.2d 421 (1st La.App.1969) the Christy-Ann-Lea Corporation entered into a contract for the performance of various services in the development of a piece of property. Among the services to be rendered were the clearing of roadways, the excavation of roadways, the hauling and spreading of gravel, and the installation of drainage structures. This court held that the Christy-Ann-Lea Corporation was a general contractor in the performance of the work on that development. The services performed by respondents herein are more similar in nature to those performed by the Christy-Ann-Lea Corporation than to those customarily performed by a workman or laborer engaged in the improvement of immovable property.
Respondents argue that John W. Spring was the supervisor of the work done on this property and as such is entitled to a lien under L.R.S. 9:4801. In support of this contention respondents cite the cases of National Homestead Association v. Graham, 176 La. 1062, 147 So. 348 (1933) and Mulligan v. Mulligan, 18 La.Ann. 20 (1866). We find these cases inapposite to the instant suit.
In Mulligan, supra, a job superintendent for the erection of a building was held entitled to a lien. However, the statute under which the superintendent claimed his *897 lien provided a lien in favor of “Every mechanic, workman or other person .” who performed work in connection with the improvement of immovable property. As presently constituted L.R.S. 9:4801 does not include the wording “other person” in the enumeration of those persons entitled to a lien thereunder.
In National Homestead Association v. Graham, supra, an architect who supervised the construction of an apartment building was granted recovery on a lien even though his supervision of the work was not done in the capacity of an architect. However, in characterizing the nature of his employment the court stated: “He was employed as supervising engineer, and worked as such.” An engineer is listed in L.R.S. 9:4801 as a person entitled to a lien but the testimony of Mr. Spring clearly indicates that the services he allegedly performed in the instant case were not those of a supervising engineer.
Even were we to hold Mr. Spring and Spring’s Thunder Agency, Inc. as the general contractors on this development, they still would not be entitled to a lien because the record clearly discloses that no written contract was ever entered into by the parties and recorded in compliance with L.R.S. 9:4802. A general contractor who failte to have a contract written and recorded is not entitled to recognition of the lien which L.R.S. 9:4801 accords him. L.R.S. 9:4802; Picou’s Builders Supply Company v. Picou, 161 So.2d 347 (4th La.App.1964); State ex rel. Bagur Co., Inc. v. Christy-Ann-Lea Corporation, supra.
L.R.S. 9:4812 provides for a lien in favor of the furnisher of labor or materials where no written contract has been entered into or recorded. However, in view of our determination that respondents were not laborers or suppliers but were at best general contractors on this job, an application of the provisions of L.R.S. 9:4812 is precluded herein.
Therefore, we conclude that respondents do not fall within the class of persons listed in either L.R.S. 9:4801 or L.R.S. 9:4812 and are thus not entitled to a lien on this property. In reaching this conclusion we are mindful of the well settled principle that lien statutes are stricti juris. Their provisions are to be strictly interpreted and the privileges conferred are not to be extended or enlarged either by implication or through equitable considerations. McGill Corporation v. Dolese Concrete Company, 201 So.2d 125 (1st La.App.1967); Executive House Building, Inc. v. Demarest, 248 So.2d 405 (4th La.App.1971).
In view of our determination that respondents are not entitled to the lien we need not pass upon the question of the timely filing of said lien herein.
Accordingly, we find that the relator-appellant is entitled to the relief prayed for and that the writ of mandamus against the respondent-appellee, Alsay Addison, Clerk of Court of Livingston Parish, should be and is hereby made absolute. The said Clerk of Court is ordered to cancel and erase from the Mortgage Records of Livingston Parish the inscription of the lien in favor of respondents, John W. Spring and Spring’s Thunder Agency, Inc. All costs are assessed against respondents, John W. Spring and Spring’s Thunder Agency, Inc.
Reversed and rendered.