ROY ANDERSON CORPORATION     *     NO. 2018-CA-0962

    *

VERSUS     COURT OF APPEAL

    *

225 BARONNE COMPLEX, L.L.C.     FOURTH CIRCUIT

    *

    STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2016-12444, DIVISION "G-11"
Honorable Robin M. Giarrusso, Judge
* * * * * *
**Judge Rosemary Ledet**
* * * * * *

(Court composed of Judge Joy Cossich Lobrano, Judge Rosemary Ledet, and Judge Sandra Cabrina Jenkins)

Lloyd N. Shields
Adrian A. D'Arcy
Michael S. Blackwell
Laura E. Avery
SHIELDS MOTT L.L.P.
650 Poydras Street, Suite 2600
New Orleans, LA 70130

     COUNSEL FOR PLAINTIFFS/APPELLEES

Leopold Z. Sher
James M. Garner
Christopher T. Chocheles
Jacob A. Airey
SHER GARNER CAHILL RICHTER KLEIN & HILBERT, LLC
909 Poydras Street, 28th Floor
New Orleans, LA 70112

     COUNSEL FOR DEFENDANT/APPELLANT

         **AFFIRMED IN PART;**
         **REVERSED IN PART;**
         **AND REMANDED**

**SEPTEMBER 25, 2019**

This is a dispute arising out of a construction contract to renovate a large office building into a hotel, an apartment building, and a garage (the "Project"). The general contractor filed a lien under the Louisiana Private Works Act. La. R.S. 9:4801, *et seq.* (the "PWA").[1] The parties involved in this appeal are as follows: (i) the general contractor, Roy Anderson Corporation ("RAC")—the plaintiff and defendant-in-reconvention; (ii) the building owner, 225 Baronne Complex, L.L.C. ("225 Baronne")—the defendant, plaintiff-in-reconvention, and third-party plaintiff; and (iii) the four sureties for the Project: Travelers Casualty and Surety Company of America, Liberty Mutual Insurance Company, Fidelity and Deposit Insurance Company of Maryland, and Federal Insurance Company (collectively the "Surety Defendants")—the third-party defendants.

From the trial court's judgment granting RAC's peremptory exceptions of prescription and *res judicata* and granting the Surety Defendants' peremptory exceptions of no right of action and no cause of action, 225 Baronne appeals. For

---

[1] Although the Legislature amended the PWA in 2019, the amendment does not make any substantive change affecting the provisions of the PWA at issue here.

1

the reasons that follow, we reverse in part—as to the granting of RAC's exceptions of prescription and *res judicata*; affirm in part—as to the granting of the Surety Defendants' exceptions of no right of action and no cause of action; and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts regarding this appeal are undisputed and are set forth in *225 Baronne Complex, LLC v. Roy Anderson Corp.*, 16-0492 (La. App. 4 Cir. 12/14/16) (*unpub.*), 2016 WL 7238975, *writ denied*, 17-0326 (La. 4/7/17), 218 So.3d 116 ("*225 Baronne I*"). To provide a framework for analyzing the issues presented by this appeal, we provide the following chronology of the relevant factual and procedural events:

- **November 8, 2013**: 225 Baronne entered into a design-build contract with RAC for the Project (the "Contract"); on the same date, the Contract was recorded in the Orleans Parish mortgage records.

- **October 23, 2015**: Having achieved substantial completion of the Project, 225 Baronne recorded a Notice of Termination in the Orleans Parish mortgage records.

- **December 18, 2015**: RAC signed a Confirmation of No Default, which indicated that 225 Baronne was not in default of any previously billed payment obligations;[2] and 225 Baronne paid RAC $2,941,725.28.

- **December 22, 2015**: RAC recorded a Statement of Lien and Privilege pursuant to La. R.S. 9:4802 of the PWA, stating that 225 Baronne owed it $15,401,300 (the "Lien") and that the balance owed "represents material, labor, equipment, and services provided to Owner in connection with the [Project]."

- **December 28, 2015**: 225 Baronne sent a demand letter to RAC requesting that it immediately—within ten days—direct the Recorder of Mortgages for Orleans Parish (the "Recorder") to remove the Lien.

---

[2] RAC, however, reserved its rights and defenses regarding its un-submitted extra work claims, unbilled amounts, and liquidated damages.

- **January 12, 2016**: 225 Baronne instituted a summary mandamus proceeding pursuant to La. R.S. 9:4833 and La. R.S. 44:114 to remove the Lien (the "Lien Lawsuit"). The Lien Lawsuit petition—styled as a "Petition for Removal of Statement of Claim and Privilege and for Damages"—was filed against the Recorder and RAC.[3]

- **February 22, 2016**: The trial court ruled in 225 Baronne's favor and ordered the Recorder to remove the Lien. The trial court deferred ruling on 225 Baronne's request for attorney's fees and damages.

- **April 21, 2016**: The Recorder removed the Lien.

- **December 14, 2016**: On RAC's appeal, this court, in *225 Baronne I*, held that the Lien met the statutory requirements of a valid lien. Accordingly, this court reversed the trial court's judgment and ordered the Recorder to reinstate the Lien.

- **December 21, 2016**: RAC filed an ordinary proceeding (the "Enforcement Lawsuit")—styled as a "Petition to Enforce Lien and for Damages." In its petition, RAC alleged that 225 Baronne had failed to pay RAC the total amount due for the work it had performed on the Project.

- **April 7, 2017**: The Louisiana Supreme Court denied 225 Baronne's writ application in *225 Baronne I*.

- **May 1, 2017**: 225 Baronne answered RAC's petition in the Enforcement Lawsuit and reconvened against RAC seeking costs and attorney's fees.

- **September 1, 2017**: The Recorder reinstated the Lien.

- **November 13, 2017**: 225 Baronne filed an amended reconventional demand, asserting the following six causes of action against RAC: (i) racketeering; (ii) fraud; (iii) breach of contract, (iv) negligent misrepresentation; (v) gross negligence; and (vi) abuse of rights (the "Reconventional Demand"). 225 Baronne also filed a third party demand against the Surety Defendants, seeking to recover from them under the performance and payment bonds they issued regarding the Project (the "Third Party Demand").

- **February 2, 2018**: 225 Baronne filed a fourth supplemental and amended reconventional demand and third party demand, again raising the same six

---

[3] In the Lien Lawsuit, 225 Baronne averred that the Lien was improper under La. R.S. 9:4833 for the following two reasons: (i) the Contract barred the Lien; and (ii) the Lien contained amounts that were not submitted to 225 Baronne for payment. 225 Baronne requested that the trial court order the Recorder to remove the Lien and that it be awarded damages and attorney's fees incurred in having the Lien removed. Opposing the Lien Lawsuit, RAC contended that the Lien met the requirements of La. R.S. 9:4822 and was proper.

claims against RAC as in the Reconventional Demand and the same claims against the Surety Defendants as in the Third Party Demand.

- **March 15, 2018:** RAC filed prescription and *res judicata* exceptions, and the Surety Defendants filed no right of action and no cause of action exceptions (collectively the "Exceptions").

- **June 25, 2018**: A hearing was held on the Exceptions, and the trial court took the matter under advisement.

- **July 24, 2018**: The trial court granted the Exceptions.[4]

## DISCUSSION

As noted at the outset, 225 Baronne appeals the trial court's judgment granting the Exceptions.[5] Although 225 Baronne asserts multiple assignments of error, we frame the issue presented as whether the trial court erred in granting the Exceptions. We organize our analysis around each of the Exceptions—prescription, *res judicata*, no right of action, and no cause of action.

*Prescription*

On appeal, 225 Baronne raises multiple theories in support of its position that the trial court erred in sustaining RAC's prescription exception, including *contra non valentum*, relation back, suspension, and interruption. Because we find the interruption theory dispositive, we do not reach the other theories.

---

[4] The trial court provided the following written reasons for granting the exceptions of prescription and *res judicata*:

> What is clear to this Court is that while 225 Baronne Complex, LLC did state a cause of action in its reconventional demand, they waited too late to file said demand. It should have been filed along with the lien dispute, and as such, is barred by res judicata. Additionally, the claim has prescribed. The law mandates that suit be filed in a timely manner once the plaintiff SHOULD or COULD have known they were damaged.

[5] The trial court issued an amended judgment to clarify an ambiguity in the original judgment. 225 Baronne appealed from both judgments.

When evidence is introduced on the prescription exception, but the case presents no dispute regarding the material facts, only the determination of a legal issue, *a de novo* standard of review applies, "giving no deference to the trial court's legal determination". *Wells Fargo Fin. Louisiana, Inc. v. Galloway*, 17-0413, p. 8 (La. App. 4 Cir. 11/15/17), 231 So.3d 793, 800; *see also Kirt v. Metzinger*, 19-0180, p. 4 (La. App. 4 Cir. 6/19/19), 274 So.3d 1271, 1273 (citing *Wells Fargo, supra*, and observing that the legal correctness of a trial court's ruling on a prescription exception is reviewed under a *de novo* standard). Such is the case here.[6]

A prescriptive period is interrupted "when the obligee commences action against the obligor, in a court of competent jurisdiction and venue." La. C.C. art. 3462. Prescription is interrupted by the filing of suit "even when the petition fails to state a cause of action." *Velazquez v. Landcoast Insulation, Inc.,* 08-804, p. 7 (La. App. 3 Cir. 12/10/08), 999 So.2d 318, 323. "An action commenced in a court of competent jurisdiction and venue, or with service of process within the prescriptive period, continues to interrupt prescription for as long as the suit remains pending." *Ansardi v. Louisiana Citizens Prop. Ins. Corp.*, 11-1717, 12-0166, p. 20 (La. App. 4 Cir. 3/1/13), 111 So.3d 460, 471-72 (citing La. C.C. art. 3463). When prescription is interrupted, the time that has elapsed is wiped out; "[p]rescription commences to run anew from the last day of interruption." La. C.C. art. 3466. Prescriptive statutes are construed liberally in favor of maintaining the

---

[6] In opposing RAC's prescription exception, 225 Baronne introduced an affidavit.

obligation sought to be extinguished. *Succession of Tompkins*, 32,405, p. 5 (La. App. 2 Cir. 12/8/99), 747 So.2d 1251, 1254.

Applying these principles, we find that the trial court erred in granting the prescription exception. Prescription commenced running on December 22, 2015, when RAC recorded the Lien, prescription was interrupted when 225 Baronne filed the Lien Lawsuit on January 16, 2016. The Lien Lawsuit remained pending until the Louisiana Supreme Court denied 225 Baronne's writ application on April 7, 2017; prescription began to run anew at that time. Given that 225 Baronne filed the Reconventional Demand on November 13, 2017, its claims are not prescribed.[7] We, thus, reverse the trial court's judgment granting RAC's prescription exception.

*Res Judicata*

RAC's exception of *res judicata* is based on this court's 2016 decision in *225 Baronne I*, which reversed the trial court's judgment in the Lien Lawsuit and ordered that the Lien be reinstated. The gist of RAC's position is that this court's decision in *225 Baronne I* precludes any and all claims by 225 Baronne arising out of RAC's work on the Project. Ruling in RAC's favor, the trial court, in its written reasons for judgment, stated that "[225 Baronne's Reconventional Demand] should have been filed along with the lien dispute, and as such, is barred by res judicata."

On appeal, 225 Baronne contends that the trial court erroneously found that it should have brought its Reconventional Demand, which asserted a $20 million

---

[7] It is undisputed that the subsequent amendments to the Reconventional Demand related back to the original one. The shortest prescriptive period is for 225 Baronne's tort claims—one year. *See* La. C.C. art. 3492 (providing "[d]elictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained").

tort claim via ordinary proceeding, with the summary mandamus proceeding to remove the lien—the Lien Lawsuit. It emphasizes that, under Louisiana law, it could not have cumulated an ordinary proceeding with a summary proceeding.[8] For this reason, among others, 225 Baronne contends that *res judicata* is inapplicable here. RAC counters that the trial court correctly concluded that *res judicata* applies here and that there was no procedural bar to 225 Baronne asserting its damage claims in the Lien Lawsuit. Indeed, RAC emphasizes that 225 Baronne prayed for damages in the Lien Lawsuit and that the Lien Lawsuit was captioned a "Petition for Removal of Statement of Claim and Privilege and for Damages."

An exception of *res judicata* presents a question of law and is reviewed *de novo*. *See Barrie v. City of New Orleans*, 17-1001, p. 8 (La. App. 4 Cir. 5/23/18), 248 So.3d 483, 488, *writ denied*, 18-1041 (La. 10/15/18), 253 So.3d 1306. Stated otherwise, the standard of review of an exception of *res judicata* requires an appellate court to determine if the trial court's decision is legally correct or incorrect. *Bd. of Sup'rs of Louisiana State Univ. v. Dixie Brewing Co.*, 14-0641, p. 6 (La. App. 4 Cir. 11/19/14), 154 So.3d 683, 688 (collecting cases). Any doubt as to whether *res judicata* applies is to be resolved against its application. *Dixie Brewing*, 14-0641, p. 6, 154 So.3d at 688; *Armbruster v. Anderson*, 18-0055, p. 8 (La. App. 4 Cir. 6/27/18), 250 So.3d 310, 316, *writ denied*, 18-1276 (La. 11/5/18), 255 So.3d 1054.

"Principles of *res judiciata* are not ironclad." *Sharp v. Johnson Bros. Corp.*, 95-1311, p. 11 (La. App. 4 Cir. 1/8/97), 687 So.2d 568, 573.

---

[8] In support, 225 Baronne cites *F.D.I.C. v. Lee*, 942 F.Supp. 255, 258 (E.D. La. 1996), which held that that "a mandamus suit may be brought by a summary proceeding while a suit for declaratory judgment must be brought in an ordinary proceeding" and that "[f]or this reason a petitioner in state court cannot cumulate a suit for mandamus with one for declaratory judgment."

In Louisiana, *res judicata* is codified in statutory provisions. Since the Legislature revamped the *res judicata* statutory provisions in 1991, *res judicata* in Louisiana, akin to federal law and common law, applies to "all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished. . . ." La. R.S. 13:4231; *Dixie Brewing*, *supra*.

A second action is precluded by *res judicata* when all of the following five elements are satisfied: (1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of the final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation. *Schiff v. Pollard*, 16-0801, pp. 9-10 (La. App. 4 Cir. 6/28/17), 222 So.3d 867, 875 (quoting *Burguieres v. Pollingue*, 02-1385, p. 8 (La. 2/25/03), 843 So.2d 1049, 1053).

The first three elements required for *res judicata* to apply are undisputed—the judgment in the Lien Lawsuit is both valid and final, and the parties to the Lien Lawsuit and the Reconventional Demand in the Enforcement Lawsuit are the same. While the parties dispute whether the fourth and fifth elements are satisfied, we find it unnecessary to resolve that dispute given we conclude that the exceptional circumstances exception, codified in La. R.S. 13:4232 (A)(1),[9] applies here. *See Dixie Brewing Co.*, 14-0641, p. 9, 154 So.3d at 689-90.

---

[9] La. R.S. 13:4232 (A)(1) provides as follows:

> A. A judgment does not bar another action by the plaintiff:
>
>> (1) When exceptional circumstances justify relief from the res judicata effect of the judgment . . .

The exceptional circumstances exception "generally applies to complex procedural situations in which litigants are deprived of the opportunity to present their claims due to unanticipated quirks in the system, to factual situations that could not be anticipated by the parties, or to decisions that are totally beyond the control of the parties." *Oleszkowicz v. Exxon Mobil Corp.*, 14-0256, p. 5 (La. 12/9/14), 156 So.3d 645, 648 (quoting *Kevin Associates, LLC v. Crawford*, 04-2227, p. 8 (La. App. 1 Cir. 11/4/05), 917 So.2d 544, 549).

Explaining the extraordinary circumstances exception, the Louisiana Supreme Court in *Terrebonne Fuel & Lube, Inc. v. Placid Ref. Co.*, 95-0654, 95-0671, p. 13 (La. 1/16/96), 666 So.2d 624, 632, observed:

> Although rarely mentioned, exceptions exist to the common law theory of *res judicata*, as noted in the *Restatement (Second) of Judgments*, § 26 (1982). These exceptions involve "exceptional circumstances" as where (a) the parties have agreed that the plaintiff may split his claim, or the defendant has acquiesced therein; (b) the court in the first action has expressly reserved the plaintiff's right to maintain the second action; (c) there are restrictions on the subject matter jurisdiction of the courts; (d) the judgment in the first action was plainly inconsistent with the fair and equitable implementation of a statutory or constitutional scheme; (e) for policy reasons; or (f) it is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason. *Restatement (Second) of Judgments*, § 26 (1982), pg 233-234.

As established elsewhere in this opinion, the instant case falls squarely within the ambit of example (d)—that the judgment in the first action was plainly inconsistent with the fair and equitable implementation of a statutory or constitutional scheme—which the jurisprudence has labeled the "statutory-scheme exception." *In re LB Steel, LLC*, 572 B.R. 690, 703-04 (Bankr. N.D. Ill. 2017). Under the statutory-scheme exception, "the general rule of claim splitting does not apply where 'it is the sense of the [statutory] scheme that the plaintiff should be permitted to split [its] claim.'" *Id.* (quoting *Restatement* § 26(1)(d)).

9

*Restatement* § 26, Comment (e)—captioned "Implementation of a statutory or constitutional scheme (Subsection (1)(d))"—provides that "it may appear from a consideration of the entire statutory scheme that litigation, which on ordinary analysis might be considered objectionable as repetitive, is here intended to be permitted. See Illustration 5." Illustration 5 reads as follows:

> For nonpayment of rent, landlord A brings a summary action to dispossess tenant B from leased premises. A succeeds in the action. A then brings an action for payment of the past due rent. The action is not precluded if, for example, the statutory system discloses a purpose to give the landlord a choice between, on the one hand, an action with expedited procedure to reclaim possession which does not preclude and may be followed by a regular action for rent, and, on the other hand, a regular action combining the two demands.

By analogy, the PWA's statutory scheme discloses a purpose to afford an owner with a fast-track, mandamus procedure, under La. R.S. 44:114, to obtain removal of a clearly unjustified lien, coupled with a right to attorney's fees and damages in certain circumstances. *See* La. R.S. 9:4833. The fact that the owner can—and here did—file a damage claim in the summary mandamus proceeding is not outcome determinative of the *res judicata* issue. Rather, the dispositive issue is whether, considering the sense of the entire PWA's statutory scheme, an owner should be allowed to split its claim—file a summary mandamus proceeding to remove a clearly unjustified lien, but, if unsuccessful, be allowed to assert a reconventional demand in the lien claimant's ordinary proceeding to enforce the lien. We answer that question in the affirmative.

The summary mandamus procedure is designed to address the situation presented when the lien procedure is abused—used to encumber someone's immovable property without a reasonable basis to do so. *See* La. R.S. 9:4833, cmt. (a)(2019) (observing that the summary mandamus procedure "is designed to

10

discourage the filing of a claim that is clearly unjustified, late, or otherwise made without reasonable cause for believing it is valid in the hope that economic pressure may be placed upon the owner or contractor to extract a settlement or other payment as the price of a release"); *see also S.D. Deacon Corp. of Washington v. Gaston Bros. Excavating, Inc.*, 150 Wash.App. 87, 90; 206 P.3d 689, 691 (2009) (observing that "[t]he lien procedure can be abused by persons who desire to encumber someone else's real property improvement without any real basis for doing so").

As the jurisprudence has recognized, "an improper or illegal lien recorded against immovable property will hamper the owner in efforts to encumber or sell the property." *Gauguin, Inc. v. Addison*, 288 So.2d 893, 894-95 (La. App. 1st Cir. 1973) (internal citations omitted). "[T]o require the owner in all such cases to await the outcome of ordinary proceedings to cancel the lien" would be unjust. *Id.* at 895. "Many construction projects contemplate or are dependent upon financing arrangements, leases, or conveyances that are to be consummated shortly after completion of the work." La. R.S. 9:4833, cmt. (a)(2019).

When the ruling in the summary mandamus procedure is in the owner's favor, "[t]he judgment rendered pursuant to the action is tantamount to a declaration that the claimant has no privilege at all." Thomas A. Harrell, *Security Devices*, 48 La. L. Rev. 477, 489 (1987). Conversely, when the summary mandamus proceeding does not result in a judgment in the owner's favor, the lien claimant, to preserve the privilege, is required to file an ordinary action to enforce the privilege "within one year after the filing of the statement of claim or privilege." La. R.S. 9:4823(A)(2). A summary mandamus proceeding does not toll the period for filing a petition to enforce the lien. *Clark Constr. Co. v. Warren*,

11

34,306, p. 2 (La. App. 2 Cir. 12/6/00), 774 So.2d 1091, 1092. Nor is a summary

mandamus proceeding precluded by the pendency of another suit concerning the

lien. *Gauguin*, 288 So.2d at 895. As these cases demonstrate, a summary

mandamus proceeding is separate and distinct from an ordinary action to enforce

the lien.

Summary mandamus proceedings arguably should be confined to cases in

which "the evidence undisputably shows the lien was improperly filed or the issue

is uncontested." *Rhodes Steel Bldgs., Inc. v. Walker Const. Co.*, 35,917, 35,918,

p. 12, n. 6 (La. App. 2 Cir. 4/3/02), 813 So.2d 1171, 1179 (addressing La.

R.S. 38:2242.1, which tracks the language of La. R.S. 9:4833 and provides for a

summary mandamus proceeding under the Public Works Act); *S.D. Deacon Corp.*,

150 Wash.App. at 90-91, 206 P.3d at 691 (observing that "[t]he summary

procedure provided by the statute is not to be used as a substitute for trial where

there is a legitimate dispute about the amount of work done and money paid" and

that "[e]very frivolous lien is invalid, but not every invalid lien is frivolous").

In the summary mandamus proceeding, "[t]he owner of the property against

which a lien is filed who seeks to have the recordation cancelled and erased by a

rule to show cause merely calls upon the person recording the lien to show some

color of right to the lien and that the affidavit or other writing evidencing the claim

was timely filed." *Succession of Lard v. Poland*, 42,284, p. 8 (La. App. 2 Cir.

6/20/07), 960 So.2d 1254, 1258 (citing *Davis-Wood Lumber Co. v. Wood*, 224 La.

825, 71 So.2d 125 (1954)). "To go further and require the person recording the lien

to prove the validity of each item making up his claim on the rule to show cause

would be to try the merits of the case by rule." *Id.* As a commentator has noted, the

summary mandamus proceeding "was not intended to substitute for a trial on the

merits of the claim." Thomas A. Harrell, *Security Devices*, 48 La. L. Rev. 477, 489 (1987).

In *225 Baronne I*, this court observed that "[t]his opinion offers no position on the amounts, if any, that may be owed under the Lien. That determination must be made at a trial to enforce the Lien." 16-0492, p. 8, n. 8, 2016 WL 7238975 at **15. This court further observed that "the fact that the exact amount owed may be in dispute is not sufficient to invalidate the [L]ien *per se*." 16-0492, p. 7, 2016 WL 7238975 at **14. In *225 Baronne I*, we acknowledged that, in the instant case, there would be a subsequent, ordinary suit to try the merits of the Lien. For these reasons, the nature of the PWA statutory scheme dictates that, in this context, the owner—225 Baronne—be allowed to assert its claims in this ordinary proceeding. Because the statutory-scheme exception thus applies here, the trial court erred in granting RAC's *res judicata* exception.

*No Right of Action*

The Surety Defendants issued payment and performance bonds for the Project.[10] 225 Baronne contends that the trial court erred in granting the Surety

---

[10] The PWA recognizes the difference between payment and performance bonds; however, the PWA only regulates payment bonds. *See Congregation of St. Peter's Roman Catholic Church of Gueydan v. Simon*, 497 So.2d 409, 412 (La. App. 3d Cir. 1986) (citing La. R.S. 9:4812(C)). The distinction between these types of bonds is explained in 11A COUCH ON INS. § 163:10 (2019) as follows:

> A performance bond guarantees that the contractor will perform the contract, and usually provides that, if the contractor defaults and fails to complete the contract, the surety can itself complete the contract or pay damages up to the limit of the bond.

> A labor and material payment bond guarantees the owner that all bills for labor and materials contracted for and used by the contractor will be paid by the surety if the contractor defaults. The purpose of a payment bond or provision is to protect the equity of the owner and the owner's property against the claims of unpaid subcontractors or suppliers. Such a bond is not a general indemnity bond and does not insure the reliability of the subcontractor in all accounts for fraud or otherwise. Statutory requirements, and the language which is "typical" in a certain bond, may vary considerably from state to state, especially as to payment bonds.

Defendants' exception of no right of action under the payment bond.[11]

225 Baronne's position is that because RAC has made a $15,401,300 claim against it that includes amounts allegedly owed to subcontractors and because the plain language of the payment bond obligates the Surety Defendants to pay or to indemnify 225 Baronne from the claims of subcontractors, 225 Baronne has a right of action against the Surety Defendants under the payment bond.[12] The Surety Defendants counter that 225 Baronne has no right of action because, as an owner, it is not a proper claimant under the payment bond.

The standard of review of a trial court ruling on an exception of no right of action is *de novo*. *See N. Clark, L.L. C. v. Chisesi*, 16-0599, p. 3 (La. App. 4 Cir. 12/7/2016), 206 So. 3d 1013, 1015. "The function of an exception of no right of action is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit." *Gunasekara v. City of New Orleans*, 18-0639, p. 6 (La. App. 4 Cir. 1/30/19), 264 So.3d 1236, 1240. Simply put, an exception of no right of action tests a plaintiff's standing to assert a claim.

---

*Id. (*internal footnotes omitted).

[11] As discussed elsewhere in this opinion, the Surety Defendants also filed an exception of no cause of action as to 225 Baronne's Third Party Demand against them under the performance bond, which the trial court granted.

[12] In support, 225 Baronne cites the following provision of the payment bond:

Section 1:

The Contractor and Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated herein by reference, subject to the following terms.

Section 4:

When the Owner has satisfied the conditions of Section 3, the Surety shall promptly and at the Surety's expense defend, indemnify and hold harmless the Owner against a duly tendered claim, demand, lien or suit.

The payment bond is a statutory bond; the provisions of the PWA governing statutory bonds are incorporated into the payment bond as if set forth therein. *See* La. R.S. 9:4812 (D).[13] The PWA's purpose is to protect subcontractors, among others, who engage in construction projects and lack privity of contract with the project owner. *Buck Town Contractors & Co. v. K-Belle Consultants, LLC*, 15-1124, p. 5 (La. App. 4 Cir. 4/6/16), 216 So.3d 981, 984. To do so, the PWA grants those parties rights to facilitate recovery of the costs of their work from the owner. *Buck Town Contractors*, 15-1124, p. 3, 216 So.3d at 983 (citing *Byron Montz, Inc. v. Conco Construction, Inc.*, 02-0195, pp. 6-8 (La. App. 4 Cir. 7/24/02), 824 So.2d 498, 502-03.

Under the PWA, claims against the owner are secured by a privilege on the immovable on which the work was done. *See Newt Brown, Contractor, Inc. v. Michael Builders, Inc.*, 569 So.2d 288, 290 (La. App. 2d Cir. 1990) (citing La R.S. 9:4802(B)). Although La. R.S. 9:4802(A) imposes liability on owners for

---

[13] La. R.S. 9:4812(D) provides that "[t]he bond of a legal surety attached to and filed with the notice of contract of a general contractor shall be deemed to conform to the requirements of this part notwithstanding any provision of the bond to the contrary, but the surety shall not be bound for a sum in excess of the total amount expressed in the bond." *See also Peter M. Trapolin & Assocs., Architects v. Twin City Fed. Sav. & Loan Ass'n (Twin City Sav. Bank, FSB)*, 488 So.2d 1191, 1193 (La. App. 4th Cir. 1986) (observing that "[t]he words 'this part' refer to the entire Private Works Act"); *H. G. Angle Co. v. Talmadge*, 410 So.2d 1151, 1154 (La. App. 3d Cir. 1981) (when the contract and bond have been properly entered into and recorded pursuant to the Private Works Act, the bond is considered a statutory bond; thus, the bond incorporates by reference all of the provisions of the Private Works Act).

Although 225 Baronne cites the language of the payment bond to establish that the Surety Defendants are obligated to pay or indemnify it from the claims of subcontractors, Section 14 of the payment bond provides:

> When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision of this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. When so furnished, the intent is that this Bond shall be construed as a statutory bond and not a common law bond.

claims arising out of the performance of work under the contract, La.

R.S. 9:4802(C) expressly creates an "escape hatch" that relieves an owner of

liability when an owner complies with its provisions. *See Newt Brown*, *supra*

(observing that "[t]o avail itself of the escape hatch, the owner must assure that a

bond for the general contractor has been furnished").

Here, the governing provision of the PWA is La. R.S. 9:4802(A), which

defines those persons granted a claim or privilege against the owner pursuant to the

PWA as follows:

> (1) Subcontractors, for the price of their work.
>
> (2) Laborers or employees of the contractor or a subcontractor, for the price of work performed at the site of the immovable.
>
> (3) Sellers, for the price of movables sold to the contractor or a subcontractor that become component parts of the immovable, or are consumed at the site of the immovable, or are consumed in machinery or equipment used at the site of the immovable.
>
> (4) Lessors, for the rent of movables used at the site of the immovable and leased to the contractor or a subcontractor by written contract.
>
> (5) Prime consultant registered or certified surveyors or engineers, or licensed architects, or their professional subconsultants, employed by the contractor or a subcontractor, for the price of professional services rendered in connection with a work that is undertaken by the contractor or subcontractor.[14]

A payment bond issued under the PWA stands in as security to respond to

claims made only by claimants listed in La. R.S. 9:4802(A). 225 Baronne, as the

owner, is not in the class of persons to whom the law grants a right of action under

---

[14] The 2019 amendment to the PWA rewrote La. R.S. 9:4802(A)(5). As amended, this section now provides:

> (5) Professional consultants engaged by the contractor or a subcontractor, and the professional subconsultants of those professional consultants, for the price of professional services rendered in connection with a work that is undertaken by the contractor or subcontractor.

the payment bond. The trial court, thus, did not err in granting the Surety Defendants' exception of no right of action under the payment bond.[15]

*No Cause of Action*

225 Baronne contends that that trial court erred in granting the exception of no cause of action under the performance bond because the Surety Defendants bound themselves to 225 Baronne for the performance of the Contract.[16] 225 Baronne further contends that RAC did not perform the Contract; thus, the Surety Defendants are obligated to indemnify it from any damages it sustains for RAC's failure to satisfy its obligations. The Surety Defendants counter that 225 Baronne failed to state a cause of action against them under the performance bond

---

[15] RAC cites one case that generally supports this conclusion. *No Fault Tennis & Track, LLC v. A-1 Asphalt Paving & Repair, Inc*., 04-1297 (La. App. 5 Cir. 3/29/05), 900 So.2d 983. In *No Fault Tennis,* however, involved a public works bond and not a PWA payment bond as in this case.

In *No Fault Tennis*, the surety issued a performance bond and a labor and material payment bonds in connection with a contract to resurface a public school athletic track. An unpaid subcontractor sued the contractor and filed liens against the school board. The school board filed a third-party claim against the surety. The appellate court affirmed the trial court's jugdment granting an exception of no right of action and dismissing the third-party claim under the payment bond, in part, because the bond was statutory and because the school board was not the proper claimant under the statute. The appellate court observed:

> Section 2242 [of the Public Works Act] defines who may be a claimant pursuant to a statutory payment bond. That section provides that only parties who are owed money for providing labor and materials to the job in question are proper claimants. The public body (or owner) of the project is not a "claimant" under the statute, and therefore the School Board here has no right of action against St. Paul under the payment bond, and the exception was properly sustained.

*No Fault Tennis,* 04-1297, p. 3, 900 So.2d at 985.

[16] In support, 225 Baronne cites Section 1 of the performance bond, which provides: "[t]he Contractor and Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference."

because the bond contains specific conditions precedent to their liability that 225 Baronne failed to fulfill.

A *de novo* standard of review applies to a trial court ruling on an exception of no cause of action. *See Foti v. Holliday*, 09-0093, p. 6 (La. 10/30/09), 27 So.3d 813, 817; *Hershberger v. LKM Chinese, L.L.C.*, 14-1079, p. 2 (La. App. 4 Cir. 5/20/15), 172 So.3d 140, 143. "An exception of no cause of action is likely to be granted only in the unusual case in which the plaintiff includes allegations that show on the face of the petition that there is some insurmountable bar to relief." *City of New Orleans v. Bd. of Directors of Louisiana State Museum*, 98-1170, p. 10 (La. 3/2/99), 739 So.2d 748, 756. Such is the case here.

As noted elsewhere in this opinion, a performance bond guarantees that the contractor will perform the contract.[17] A performance bond is a conventional bond; hence, the language of the bond itself controls. *See Nat'l Am. Bank of New Orleans v. Southcoast Contractors, Inc.*, 276 So.2d 777, 781 (La. App. 1st Cir. 1973) (observing that a PWA performance bond is conventional in sense that the parties are controlled by language, intention, and meaning of documents).

As the Surety Defendants contend, Section 3 of the performance bond provides that the Surety Defendants' obligations under the performance bond only arise after 225 Baronne has satisfied that following four conditions precedent:

- Substantiates that it is not in default of its contractual obligations;

- Declares a Contractor Default;

- Terminates the Contract with notice to the Surety Defendants; and

---

[17] The only reference in the PWA to a performance bond is in La. R.S. 9:4812(C), which provides for a "presumption that a bond given under the Act comprehends both payment and performance unless a guarantee of the contractor's performance is expressly excluded." La. R.S. 9:4812, cmt. (d) (2019).

18

- Tenders the balance of the Contract price in accordance with the terms of the Contract to either the Surety Defendants or a contractor selected to perform the Contract.[18]

The first condition is not addressed by the parties; we thus confine our analysis to the other three conditions.

*Contractor Default*

It is undisputed that 225 Baronne failed to formally declare a Contractor Default. Nonetheless, 225 Baronne contends that RAC was in default, as a matter of law, given it failed to meet the Contract deadlines to obtain a temporary certificate of occupancy or achieve substantial completion by January 7, 2015. In support, 225 Baronne cites La. C.C. art. 1990, which provides that "[w]hen a term for the performance of an obligation is either fixed, or is clearly determinable by the circumstances, the obligor is put in default by the mere arrival of that term. In

---

[18] Section 3 of the performance bond provides the following three conditions precedent to invoking the Surety Defendants' liability under the performance bond:

§3     If there is no Owner Default under the Construction Contract, the Surety's obligation under this Bond shall arise after:

1. The Owner first provides notice to the Contractor and the Surety that the Owner is considering declaring a Contractor Default. Such notice shall indicate whether the Owner is requesting a conference among the Owner, Contractor, and Surety to discuss the Contractor's performance. If the Owner does not request a conference, the Surety may, within five (5) business days after receipt of the Owner's notice, request such a conference. If the Surety timely requests a conference, the Owner shall attend. Unless the Owner agrees otherwise, any conference requested under this section 3.1 shall be held within ten (10) business days of the Surety's receipt of the Owner's notice. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any subsequently to declare a Contractor Default;

2. The Owner declares a Contractor Default, terminates the Construction Contract and notifies the Surety; and

3. The Owner has agreed to pay the Balance of the Contract Price in accordance with the terms of the Construction Contract to the Surety or a contractor selected to perform the Construction Contract.

19

other cases, the obligor must be put in default by the obligee, but not before performance is due." Contrary to 225 Baronne's contention, the performance bond provides that 225 Baronne is required to provide formal notice of default before the Surety Defendants' obligations are triggered. As the Surety Defendants contend, 225 Baronne's argument that it was sufficient that RAC was in default as a matter of law pursuant to La. C.C. art. 1990 is unpersuasive.

*Terminating the Contract*

It is undisputed that 225 Baronne failed to terminate the Contract. 225 Baronne contends that because physical work on the Project was substantially complete, any attempt to terminate would be futile and should not reasonably serve as a condition for recovery. As the Surety Defendants contend, the Contract, which is incorporated into the performance bond by reference, provides the terms by which 225 Baronne could terminate the Contract, including a requirement that 225 Baronne give seven days written notice of its intent to terminate to both the Surety Defendants and RAC. 225 Baronne failed to provide notice of intent to terminate to the Surety Defendants and failed to terminate RAC. 225 Baronne thus failed to satisfy this condition.

*Tendering the Contract Balance*

It is undisputed that 225 Baronne failed to tender the Contract balance to the Surety Defendants or a contractor selected to perform the Contract. 225 Baronne claims that it was not required to tender the balance for two reasons: (i) RAC failed to complete the Contract; and (ii) 225 Baronne has the contractual right to set off any amounts due RAC under the Contract. This argument overlooks the language of the performance bond, which requires that 225 Baronne tender the Contract balance. This condition was not satisfied.

20

Given that 225 Baronne failed to satisfy multiple conditions set forth in the performance bond, the trial court did not err in granting the Surety Defendants' exception of no cause of action under the performance bond.

## DECREE

For the foregoing reasons, the trial court's judgment granting RAC's peremptory exceptions of prescription and *res judicata* is reversed; the trial court's judgment granting the Surety Defendants' peremptory exceptions of no right and no cause of action is affirmed; and this matter is remanded for further proceedings.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED**